## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff/Respondent,** | ) | |
| | ) | |
| **v.** | ) | **Criminal Case No. CR-18-00032-001-RAW** |
| | ) | |
| **BRUCE AARON BARDESIS,** | ) | |
| | ) | |
| **Defendant/Movant.** | ) | |

## ORDER

Now before the court is a letter/motion for sentence reduction ("motion") pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) filed by *pro se* Defendant Bruce Aaron Bardesis ("Defendant"). [Doc. 72]. Also before the court is an addendum to the motion. [Doc. 82]. The Government filed an objection to Defendant's motion. [Doc. 83]. Defendant then filed a reply [Doc. 86], a motion for judgment on the pleadings [Doc. 87], and a supplemental brief [Doc. 88]. This matter is ripe for ruling.

In March of 2018, a federal grand jury charged Defendant with possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) ("Count 1"), and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A), 924(c)(1)(A)(i), and 924(c)(1)(B)(i) ("Count 2"). On May 24, 2018, Defendant pleaded guilty to Count 1 of the two-count Indictment. [Doc. 35]. The plea was the result of a written plea agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. Within the plea agreement, the Government agreed in relevant part to dismiss Count 2 at sentencing, and the parties agreed that a 96-month term of imprisonment followed by a term of supervised release to be determined by the court was the appropriate disposition of the case. [Doc. 37 at 2, 7].

The United States Probation Office prepared a Presentence Investigation Report ("PSR"). Based upon a total offense level of 17 and a criminal history category of I, Defendant's estimated guideline range was 24 to 30 months of imprisonment. [*PSR* at ¶ 46]. The PSR, however,

specifically referenced the plea agreement, noting that "[i]f the Court adopts the terms of the plea agreement, the parties agree that a term of 96 months imprisonment . . . is the appropriate disposition of the case," that "[t]he term of 96 months is greater than the guideline calculation on Count 1 of the [I]ndictment," and that "if the defendant would have been convicted in Count 2 of the Indictment, he would have faced a term of 120 months imprisonment consecutive to the guideline range of 24-30 months." [*PSR* at ¶ 47]. The impact of the plea agreement, in other words, was 48 to 54 months to the benefit of the Defendant. *Id*. On October 24, 2018, the court adopted the plea agreement and sentenced Defendant to 96 months of imprisonment, followed by three years of supervised release. [Doc. 45]. Judgment was entered on October 25, 2018. [Doc. 48]. Defendant did not appeal his conviction or sentence, but he did file a motion under 28 U.S.C. § 2255.[1]

Less than three years have passed since sentencing, and Defendant is presently an inmate at FCI El Reno.[2] Defendant expresses concern about the presence of COVID-19 within his facility, and is requesting compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). [Doc. 72 at 4; Doc. 82 at 1]. He explains that he has "several conditions outlined by the CDC that put [him] at a high risk of illness" from COVID-19. [Doc. 72 at 4]. He suffers from type 2 diabetes mellitus and high blood pressure/hypertension. [Doc. 72 at 3-4; Doc. 83-2 at 1-4]. He is also reportedly overweight.[3] [Doc. 72 at 4]. He informs the court that he has guaranteed employment if released, and that he intends to live with his elderly mother in Hulbert, Oklahoma, and would "help provide for her daily needs and maintaining her home and property."[4] [Doc. 72 at 2, 5; Doc. 83-1 at 8].

---

[1]   Defendant's motion under 28 U.S.C. § 2255 [Doc. 56] and related pleadings will be addressed by a separate order.

[2]   Defendant is 56 years old and his projected release date is January 25, 2025. *See* BOP inmate locator, https://www.bop.gov/inmateloc/ (last visited April 9, 2021).

[3]   Defendant claims he is overweight, but he does not provide any information regarding his height and weight to the court. The PSR shows he stands 5'6" tall and weighs approximately 180 pounds. [PSR at ¶ 38]. This translates to a BMI of 29.0. *See* https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm.

[4]   His mother's health evidently took a turn for the worse in February. [Doc. 88 at 2]. He claims in his recent supplemental brief that she is in hospice care and that he would like to have an opportunity to say goodbye. *Id*. He adds that he is the executor of her estate and that "[i]t will be easier for the Defendant to handle his mother's affairs once she does pass away if he was on Home Confinement." *Id*.

He also notes that he has "an exemplary disciplinary record" and "is not likely to present a danger to the community." [Doc. 86 at 19].

The First Step Act, effective December 21, 2018, amended 18 U.S.C. § 3582(c)(1)(A) to authorize a defendant to move the sentencing court for a sentence reduction for "extraordinary and compelling reasons."[5]  *See* First Step Act of 2018, Pub. L. No. 115-391 § 603(b), 132 Stat. 5194, 5239 (2018).  In the case at hand, the Government agrees that this court has authority to consider Defendant's motion, explaining that "Defendant meets the administrative exhaustion requirements of § 3582(c)(1)(A)." [Doc. 83 at 5; Doc. 72 at 4-8].

Even so, directing the court's attention to  18 U.S.C. §§ 3582(c)(1)(A), 3142(g), and 3553(a), the Government sets forth several reasons why a reduction in sentence is not warranted. *Id*. at 5-10.  [Doc. 83 at 5-10].  The Government, while acknowledging that Defendant suffers from diabetes and high blood pressure, specifically contends that the court "should consider whether Defendant is more likely to contract COVID-19 if he is released than if he remains incarcerated." *Id*. at 7, 8.  In addition, the Government claims that "[w]hile Defendant has demonstrated he is at high risk of becoming severely ill from COVID-19, he has failed to show that the facility is unequipped to provide appropriate medical treatment if he were to become ill." *Id*. at 9.  The Government then asserts that Defendant's claims "fail to account for current prevention measures or to counter evidence that the facility at FCI El Reno is equipped to prevent or contain an outbreak." *Id*.

Next, and perhaps most notably, the Government sets forth the following argument for the court's consideration:

> This Court may not reduce Defendant's sentence unless it finds that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13. Any compassionate-release decision— even for a statutorily eligible defendant—must also consider the factors under 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A)(i). BOP's most recent internal review has classified Defendant as a "low risk" for recidivism. (*Inmate Profile*, Exh. #1 at 1). Nevertheless, it is important to note that in addition to the methamphetamine that formed the basis of the single count of conviction, Defendant was also charged, in Count 2, with possession of three firearms – a short-

---

[5]  Prior to the First Step Act, a motion for compassionate release could only be brought by the Director of the Bureau of Prisons.

barreled rifle, a semi automatic rifle, and a revolver. (*Indictment,* Doc. #3). Pursuant to Fed. R. Crim. P. 11(c)(1)(C), defendant agreed to a sentence of 96 months' imprisonment on Count 1 in exchange for the government's agreement to dismiss the firearm count at sentencing. Defendant was otherwise subject to a 120-month consecutive term of imprisonment on Count 2 which, combined with the guideline sentence for Count 1, would have produced a sentencing range of 144-150 months' imprisonment. Compassionate release at this point would undermine Defendant's bargained-for sentence of 96 months' imprisonment and this Court's acceptance of that bargain.

[Doc. 83 at 9-10].  Lastly, the court is reminded that it "cannot direct the Bureau of Prisons to place Defendant in home confinement."[6]  *Id*. at 10.

18 U.S.C. § 3582(c)(1)(A) authorizes this court to modify a term of imprisonment, upon a motion filed by a defendant, after the defendant has complied with the statute's exhaustion requirement.  The statutory language was amended by the First Step Act, and § 3582(c)(1) now provides, in pertinent part, as follows:

> (c) Modification of an imposed term of imprisonment.--The court may not modify a term of imprisonment once it has been imposed except that--
>
> (1) in any case--
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the

---

[6]    The Government correctly points out that the BOP is solely responsible for determining an inmate's place of incarceration.  Title 18 U.S.C. § 3624(c)(2), for example, permits the <u>Director of the BOP</u> to "place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months," and the CARES Act, enacted on March 27, 2020, provides that the Director "may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement" under 18 U.S.C. § 3624(c)(2). *See* Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281 (2020).  The CARES Act does not empower the courts to order that an inmate's sentence be served in home confinement.  *United States v. Johnson*, No. 20-6103, 2021 WL 1053706, at *3 (10th Cir. Mar. 19, 2021) (unpublished) (citing *United States v. Read-Forbes*, No. 20-3104, 2021 WL 423160, at *1 (10th Cir. Feb. 8, 2021) (unpublished)).

> factors set forth in section 3553(a) to the extent that they are
> applicable, if it finds that--
>
> > (i) extraordinary and compelling reasons warrant
> > such a reduction; . . . and that such a reduction is
> > consistent with applicable policy statements issued
> > by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).  It appears from the record that this court has authority to consider modification of Defendant's sentence.  Defendant submitted a request for compassionate release at his facility, and the warden denied the request on June 1, 2020.  [Doc. 72 at 4-5, 7].  Defendant then filed a request for administrative remedy on June 8, 2020, and the warden denied the request on June 19, 2020.  *Id*. at 6, 8.  Defendant filed his motion with the court on July 17, 2020. Defendant is entitled to move this court for relief.

In a recent published decision, the Tenth Circuit Court of Appeals reviewed the history and text of 18 U.S.C. § 3582(c)(1)(A)(i).  *United States v. McGee*, No. 20-5047, ---F.3d---, 2021 WL 1168980 (10th Cir. Mar. 29, 2021).  The following guidance was provided to courts considering compassionate-release motions:

> Under the plain language of the statute, a district court may thus grant a motion for reduction of sentence, whether filed by the Director of the BOP or a defendant, only if three requirements are met: (1) the district court finds that extraordinary and compelling reasons warrant such a reduction; (2) the district court finds that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (3) the district court considers the factors set forth in § 3553(a), to the extent that they are applicable.

> The Sixth Circuit, in a recent decision, interpreted § 3582(c)(1)(A)(i) in this same manner and, in doing so, adopted what it described as a three-step test for "courts considering motions filed under § 3582(c)(1)." *United States v. Jones*, 980 F.3d 1098, 1107 (6th Cir. 2020). "At step one" of the test, the Sixth Circuit held, "a [district] court must 'find[ ]' whether 'extraordinary and compelling reasons warrant' a sentence reduction." *Id*. at 1107-08 (quoting § 3582(c)(1)(A)(i)). "At step two," the Sixth Circuit held, "a [district] court must 'find[ ]' whether 'such reduction is consistent with *applicable* policy statements issued by the Sentencing Commission.' " *Id*. at 1108 (emphasis in original) (quoting § 3582(c)(1)(A)). "At step three," the Sixth Circuit held, " '§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case.' " *Id*. (quoting *Dillon v. United States*, 560 U.S. 817, 827, 130 S.Ct. 2683, 177 L.Ed.2d 271 (2010)). Because this three-step

test is consistent with the plain language of the statute, we adopt the test for use in this circuit.

We also agree with the Sixth Circuit that "district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021). But when a "district court grants a motion for compassionate release, it must of course address all three steps." *United States v. Navarro*, 986 F.3d 668, 670 (6th Cir. 2021) (citing *Elias*, 984 F.3d at 519).

*McGee*, 2021 WL 1168980, at *5-6. *See also United States v. Maumau*, No. 20-4056, ---F.3d---, 2021 WL 1217855, at *7 (10th Cir. Apr. 1, 2021).

The Sentencing Commission has provided examples of what constitutes an "extraordinary and compelling"[7] circumstance:  (1) the inmate's medical condition (i.e. individual has a terminal illness, or serious physical or medical condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"); (2) the inmate's age (individual is at least 65 years old, is experiencing a "serious deterioration in physical or mental health because of the aging process," and has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less); (3) the inmate's family circumstances (i.e., death or incapacitation of the caregiver of the individual's minor children, or incapacitation of the individual's spouse or registered partner); and

---

[7]    Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." *See* 28 U.S.C. § 994(t).  The section provides that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id*.

In *McGee*, the Tenth Circuit concluded "that Congress did not, by way of § 994(t), intend for the Sentencing Commission to exclusively define the phrase 'extraordinary and compelling reasons,' but rather for the Sentencing Commission to describe those characteristic or significant qualities or features that typically constitute 'extraordinary and compelling reasons,' and for those guideposts to serve as part of the general policy statements to be considered by district courts under the second part of the statutory test in § 3582(c)(1)(A)." *McGee*, 2021 WL 1168980, at *8.  The Circuit noted in part that the Sentencing Commission's existing policy statement was issued prior to the First Step Act, and like other circuits, ultimately concluded that the policy statement "is applicable only to motions for sentence reductions filed by the Director of the BOP, and not to motions filed directly by defendants." *Id.* at *10, *12. *See also United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020) ("Because Guideline § 1B1.13 is not 'applicable' to compassionate release motions brought by defendants, Application Note 1(D) cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling.").

(4) other reasons in the defendant's case "[a]s determined by the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13 cmt. n.1.

The court has reviewed Defendant's medical records. Defendant's type 2 diabetes mellitus and high blood pressure/hypertension are well-documented. Also, the PSR supports his claim that he is overweight (with a BMI of 29.0). Defendant has medical conditions placing him at greater risk of severe illness from COVID-19.[8] Be that as it may, the court is not persuaded that FCI El Reno is unequipped to provide appropriate medical treatment if Defendant were to become sick from COVID-19. The court has also considered whether Defendant is more likely to contract COVID-19 if he is released than if he remains incarcerated.[9]

Lastly, Defendant claims he was his mother's caregiver before he was incarcerated, and now requests the opportunity to spend time with her in her final days. The court has the deepest sympathy for the plight of Defendant and his mother. The court also notes that others in the family (such as Defendant's daughter, and possibly his brother) are available to provide his mother with appropriate care if needed. [Doc. 86-3 at 8].

The court does not find extraordinary and compelling reasons warranting compassionate release under step one of the test adopted by the Tenth Circuit in *McGee*. And, as explained by the Circuit, "district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." *McGee*,

---

[8]    "Having either type 1 or type 2 diabetes can make you more likely to get severely ill from COVID-19." *See* People at Increased Risk for Severe Illness, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html (last visited April 9, 2021). "Having heart conditions such as heart failure, coronary artery disease, cardiomyopathies, and *possibly* high blood pressure (hypertension)," and being "overweight" (defined as a BMI over 25 but less than 30), can also make you more likely to get severely ill from the virus. *Id*.

[9]    There is one confirmed active COVID-19 case among the inmates at FCI El Reno, and two confirmed cases among the staff. *See* https://www.bop.gov/coronavirus/ (last visited April 9, 2021). One inmate has died from COVID-19 at the facility since the beginning of the pandemic. The website shows 581 inmates and 80 staff members have recovered from the respiratory illness. The court also notes that the BOP has begun administering COVID-19 vaccines to members of its staff as well as to inmates of FCI El Reno. A total of 160 staff members and 111 inmates at FCI El Reno have now received both doses of the vaccine and are "fully inoculated."

2021 WL 1168980, at *6 (citing *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021)).  Still, even if the court found extraordinary and compelling reasons warranting a sentence reduction, and assuming such reduction is consistent with applicable policy statements issued by the Sentencing Commission, the court must also consider the applicable factors of § 3553(a).  The court has considered Defendant's arguments in conjunction with Defendant's history and characteristics, the offense conduct, the need for just punishment, deterrence, and protection of the public.  On the one hand, Defendant is classified at a "minimum risk recidivism level" by the BOP. [Doc. 83-1 at 1].  The court is also mindful, however, that Defendant pleaded guilty to Count 1 of the Indictment pursuant to Fed. R. Crim. P. 11(c)(1)(C), that the Government agreed to dismiss Count 2 at sentencing, that the plea agreement specifically provided that the Government and Defendant agreed to a 96-month sentence, and that Defendant was facing a much longer sentence (144 to 150 months of incarceration) had he gone to trial.  Consistent with that agreement, the court sentenced Defendant to 96 months of imprisonment.  Defendant's projected release date is January 25, 2025. [Doc. 83-1 at 4].  He has served roughly 40% of his bargained-for sentence.  *Id*.  Reducing Defendant's sentence to time served would not properly reflect the seriousness of the offense.  The § 3553(a) factors do not warrant a reduction of his sentence.

Defendant's motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [Doc. 72], as supplemented [Docs. 82; 88], is DENIED.  Defendant's motion for judgment on the pleadings [Doc. 87] is DENIED as moot.

It is so ordered this 12th day of April, 2021.

THE HONORABLE RONALD A. WHITE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF OKLAHOMA

8